1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **DEON WADE,** | ) | **1:09-CV-0599 AWI DLB** |
| | ) | |
| **Plaintiff,** | ) | **ORDER GRANTING** |
| | ) | **DEFENDANTS' MOTION TO** |
| **v.** | ) | **DISMISS IN PART AND** |
| | ) | **GRANTING PLAINTIFF LEAVE** |
| **FRESNO POLICE DEPARTMENT,** | ) | **TO AMEND THE COMPLAINT BY** |
| **et al.,** | ) | **JULY 12, 2010** |
| | ) | |
| **Defendants.** | ) | **(Document #31)** |
| | ) | |

**BACKGROUND**

On April 9, 2009, Plaintiff filed a complaint.   On December 2, 2009, Magistrate Judge

Dennis L. Beck found that the complaint stated a claim for excessive force in violation of the

Fourth Amendment and state law claims for assault and false imprisonment against Officer

Fredrick Williams, Officer Haywood Irving, Officer David Wilkin, Officer Bernard Finley, and

the Fresno Police Department ("Defendants").   The court then ordered the United States Marshal

to serve the complaint on Defendants.

On March 3, 2010, Defendants filed a motion to dismiss the complaint.   Defendants

contend that the Fresno Police Department is an improper defendant.   Defendants contend that

all state law claims should be dismissed because Plaintiff has failed to allege compliance with the

California Tort Claims Act.   Defendants contend that the complaint fails to state a claim under

the Eighth Amendment or Fourteenth Amendment, along with being legally frivolous.   Finally,

Defendants contend that they are entitled to qualified immunity.

1  On May 25, 2010, Plaintiff filed an opposition to Defendants' motion to dismiss.

2  Plaintiff contends that he was subjected to an unreasonable search and seizure, and Defendants

3  subjected him to cruel and unusual punishment and a denial of due process by kicking Plaintiff,

4  punching Plaintiff and using excessive force on Plaintiff.

5  **LEGAL STANDARD**

6  Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

7  plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)*.*  A

8  dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

9  absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

10 Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

11 Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all of the complaint's material

12 allegations of fact are taken as true, and the facts are construed in the light most favorable to the

13 non-moving party.  Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo

14 v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The court must also assume that general

15 allegations embrace the necessary, specific facts to support the claim.  Smith v. Pacific Prop. and

16 Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004).  However, the court is not required "to accept as

17 true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

18 inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v.

19 Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Although they may provide the

20 framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of

21 elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft

22 v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328

23 F.3d 1136, 1139 (9th Cir. 2003).  As the Supreme Court has explained:

24 > While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
25 > 'entitlement to relief' requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations must
26 > be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact).

27

28  2

1 Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, "a complaint must contain

2 sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

3 Iqbal, 129 S.Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content

4 that allows the court draw the reasonable inference that the defendant is liable for the misconduct

5 alleged."  Iqbal, 129 S.Ct. at 1949.

6 > The plausibility standard is not akin to a 'probability requirement,' but it asks more
> than a sheer possibility that a defendant has acted unlawfully.  Where a complaint
7 > pleads facts that are 'merely consistent with' a defendant's liability, it stops short
> of the line between possibility and plausibility of 'entitlement to relief.'
8 > . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a
9 > context specific task that requires the reviewing court to draw on its judicial
> experience and common sense.  But where the well-pleaded facts do not permit the
10 > court to infer more than the mere possibility of misconduct, the complaint has
> alleged – but it has not shown – that the pleader is entitled to relief.

11
12 Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-

13 conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

14 suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Service, 572

15 F.3d 962, 969 (9th Cir. 2009).

16 "If a complaint is dismissed for failure to state a claim, leave to amend should be granted

17 unless the court determines that the allegation of other facts consistent with the challenged

18 pleading could not possibly cure the deficiency."  Schreiber Distributing Co. v. Serv-Well

19 Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  The court may not dismiss a complaint

20 without leave to amend unless it is clear that the complaint could not be saved by any amendment.

21 Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003); Eminence Capital, LLC v. Aspeon, Inc., 316

22 F.3d 1048, 1052 (9th Cir. 2003).

**ALLEGED FACTS**

23 The complaint alleges that in the early evening of April 25, 2008, at around 5:00 p.m.,

24 Plaintiff was at the home of an acquaintance named Lamont White.  Plaintiff and Mr. White were

25 sitting on the front porch of Mr. White's residence.  The complaint alleges that Defendant

26 Bernard and Defendant Williams stopped in front of the house and exited their patrol car.  The

27

28 3

1 complaint alleges Plaintiff then walked inside the house.   The complaint alleges the police

2 officers asked Mr. White for his identification and asked if Mr. White stayed at the house.   The

3 complaint alleges that Mr. White told the officers that this was his house and gave the officers his

4 identification.   The complaint alleges that the officers then asked Mr. White about Plaintiff, and

5 Mr. White identified Plaintiff as "John".   The complaint alleges that when the officers asked Mr.

6 White whether Plaintiff had gone into the house to hide or avoid them, Mr. White said Plaintiff

7 needed to use the bathroom.

8         The officers then saw Plaintiff standing inside the house's door frame.   The complaint

9 alleges Defendant Williams ordered Plaintiff to come outside.   When Plaintiff complied, the

10 complaint alleges Plaintiff was asked if he had any identification.   Plaintiff told the officers that

11 he had left it at the home of his girlfriend, Shamika.   Upon the officers' request, Plaintiff gave

12 them Shamika's address, and Defendant Finley called for another police unit to check at the other

13 house to see if anyone could identify Plaintiff as "John Brison".   The complaint alleges that

14 Defendant Finally told Plaintiff he "would be sorry" if he was lying.   The complaint alleges that

15 Defendant Williams said that he neither believed Plaintiff's age nor Plaintiff's assertion that he

16 had not had any prior police contact.

17         The complaint alleges that when the other officers did not contact Defendant Williams

18 soon enough, Defendant Williams told Plaintiff that they would have to take him into custody and

19 run a fingerprint check.   Defendant Williams told Plaintiff he would have to handcuff Plaintiff as

20 part of standard procedures.   The complaint alleges that Plaintiff submitted to handcuffs, and he

21 was driven to Shamika's house.

22         When they arrived at Shamika's house, the complaint alleges that Defendant Irving was

23 already there.   Defendant Irving and Defendant Finley had a conversation.   The complaint alleges

24 that all of a sudden, they both opened up the rear doors of the patrol car and told Plaintiff that here

25 is "where the game ends" and Plaintiff needed to tell the truth.   The complaint alleges that in an

26 attempt to protest, and in a state of fear, Plaintiff started hollering for Shamika to come outside.

27

28                                                4

1  The complaint alleges that Defendant Finley and Defendant Williams started hollering and told

2  Plaintiff to "shut up" and that Plaintiff was going to jail for assault on police officers.   Plaintiff

3  continued hollering in the hope that Shamika would come out and identify him.   The complaint

4  alleges that Defendant Finley then punched Plaintiff in the face and choked Plaintiff.   The

5  complaint alleges Plaintiff nearly went unconscious.  The complaint alleges that Plaintiff felt his

6  entire body burning and realized that Defendant Finley had tasered him.   The complaint alleges

7  that Defendant Williams and Defendant Wilkin then pulled Plaintiff out of the patrol car and

8  again asked Plaintiff what his true name was.

9         The complaint alleges that, in a state of fear, Plaintiff ran towards the house hollering his

10  girlfriend's name while still in handcuffs.   The complaint alleges that Plaintiff ran around to the

11  side of the house, believing that Shamika would hear him from there.   The complaint alleges that

12  Defendant Wilkin ran up to Plaintiff and kicked him in the back.   The complaint alleges Plaintiff

13  was able to keep his balance and continued to move to the other side of the house, screaming out

14  Shamika's name.   The complaint alleges that the police officers then pushed Plaintiff to the

15  ground.   The complaint alleges that the officers surrounded Plaintiff, and Defendant Wilkin

16  kicked Plaintiff in the side of the rib cage.   The complaint alleges that Plaintiff felt kicks and

17  punches to his face and head area.   The complaint alleges Plaintiff felt his body burning again.

18  The complaint alleges that Plaintiff blacked out and, when he became conscious again, Plaintiff

19  was in jail.

20         Attached to the complaint is a letter addressed to Jerry Dyer, Chief of the Fresno Police

21  Department, requesting a full investigation into Plaintiff's arrest and the excessive force that took

22  place.   Also attached to the complaint is a letter from Lieutenant Anthony T. Martinez, Internal

23  Affairs Commander, stating that an investigation involving Plaintiff's letter was ongoing and

24  Plaintiff would be notified when the investigation was completed.

25  //

26

27

28                                                         5

**DISCUSSION**

**A.  Defendant Fresno Police Department**

Defendants contend that the complaint fails to state a claim against Defendant Fresno Police Department.   In addition, Defendants contend that Defendant Fresno Police Department is not a "person" who can be sued within the meaning of 42 U.S.C. § 1983.

Title 42 U.S.C.A. § 1983 provides that: "Every person  who . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  A state is not a "person" within the meaning of 42 U.S.C. § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 69-71 (1989).   Local governmental units, such as counties or municipalities, on the other hand, are "persons" within the meaning of Section 1983.   Monell v. New York City Dept. of Social Services, 436 U.S. 658 690-91 & n. 54 (1978); Will, 491 U.S. at 69-71; Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995).   However, municipal departments and sub-units, including police departments, are generally not considered "persons" within the meaning of Section 1983. United States v. Kama, 394 F.3d 1236, 1240 (9th Cir. 2005) (Ferguson, J., concurring); Chadwick v. San Diego Police Dept., 2010 WL 883839, *6 (S.D.Cal. 2010); Sholtis v. City of Fresno, 2009 WL 4030674, *4 (E.D.Cal. 2009); Harvey v. City of Fresno, 2009 WL 3157524, *5 (E.D.Cal. 2009); Brouwer v. City of Manteca, 2008 WL 2825099, *3 (E.D.Cal. 2008).   Because Defendant Fresno Police Department is a municipal department within the City of Fresno, Defendant Fresno Police Department is not a "person" who can be sued for alleged constitutional violations pursuant to Section 1983.   Thus, Defendant Fresno Police Department must be dismissed from this action.

The court is mindful that when dismissing a party or claim, the court should grant leave to amend unless it is clear that the complaint could not be saved by an amendment.  See Jackson, 353 F.3d at 758.   In this action, the City of Fresno itself may be considered a "person" pursuant to

1 Section 1983 and therefore, a proper Defendant under Section 1983 as a municipality.  Thus, the

2 court will grant Plaintiff leave to amend the complaint to name the City of Fresno as a Defendant.

3 Plaintiff is forewarned that the City of Fresno may only be held liable under Section 1983 if

4 Plaintiff alleges facts to show that the constitutional deprivations at issue, i.e. the officer's alleged

5 excessive use of force, were caused by the implementation or execution of "a policy statement,

6 ordinance, regulation, or decision officially adopted and promulgated" by the City of Fresno.  See

7 Board of the County Commissioners v. Brown, 520 U.S. 397, 402-04 (1997); Monell, 436 U.S. at

8 690.  Accordingly, Defendant Fresno Police Department is dismissed from this action and

9 Plaintiff is given leave to file an amended complaint naming the City of Fresno as a Defendant.

10 **B.  State Law Claims**

11     Defendants contend that the state law claims must be dismissed because the complaint

12 does not allege compliance with the California Tort Claims Act ("CTCA").

13     In a civil rights action, the Ninth Circuit has found that a plaintiff's supplemental state law

14 claims against a public entity and/or an employees are barred unless the plaintiff has complied

15 with the requirements of the CTCA before commencing the civil action.  See Ortega v. O'Connor,

16 764 F.2d 703, 707 (9th Cir.1985), *rev'd on other grounds*, 480 U.S. 709 (1987).  California

17 Government Code § 945.4 requires a plaintiff to file a tort claim with a public entity prior to filing

18 a complaint for damages arising out of an alleged tort by a public entity or employee.  Cal. Gov't

19 Code § 945.4; Cal. Gov't Code § 911.2;  Shirk v. Vista Unified School Dist., 42 Cal.4th 201, 208

20 (2007); K.J. v. Arcadia Unified School Dist., 172 Cal.App.4th 1229, 1238 (2009).  Such claims

21 must be presented to the governmental entity no later than six months after the cause of action

22 accrues.  Cal. Gov't Code § 911.2.  A plaintiff who receives written rejection of his claim has six

23 months from the date the rejection was mailed to file a lawsuit regarding the claim.  Cal. Gov't

24 Code 945.6(a)(1); Shirk, 42 Cal.4th at 2089.    State tort claims are subject to dismissal if a

25 plaintiff fails to comply with the requirements of the CTCA.  Karim-Panahi v. Los Angeles

26 Police Dept., 839 F.2d 621, 627 (9th Cr. 1988); Donohue v. State of California, 178 Cal. App. 3d

27

28                                          7

1  795 (1986).

2    In this action, the complaint does not allege compliance with the CTCA.   In his

3  opposition, Plaintiff appears to concede that he did not comply with the CTCA.   Rather, Plaintiff

4  points to his letter, addressed to the Police Chief Dyer, in which he asks for an investigation into

5  the actions of Defendant Wilkin, Defendant Finley, Defendant Williams, and Defendant Irving.

6  The court recognizes that if a claimant has attempted to comply with the CTCA's requirements

7  but the claim is deficient in some way, the doctrine of substantial compliance may validate the

8  claim "if it substantially complies with all of the statutory requirements . . . even though it is

9  technically deficient in one or more particulars." Connelly v. County of Fresno, 146 Cal.App.4th

10  29, 38 (2006).   Here, Plaintiff fails to allege substantial compliance.

11    The letter written to Police Chief Dyer did not substantially comply with the CTCA's

12  service requirements.  Pursuant to Section 914(a), a claim shall be presented to a local public

13  entity "by either of the following means: (1) Delivering it to the clerk, secretary or auditor

14  thereof" or "(2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal

15  office."   A claim will be deemed to have been presented in compliance with Section 914 if it is

16  actually received by the clerk, secretary, auditor, or board of the local public entity.  Cal. Gov't

17  Code § 914(d).   Here, Plaintiff has not met his burden of showing that actual notice was received

18  by the City of Fresno.  See Westcon Const. Corp. v. County of Sacramento, 152 Cal.App.4th 183,

19  201 (2007).   Thus, Plaintiff has not alleged substantial compliance with the CTCA's service

20  requirements.

21    The letter also did not contain the necessary information to show substantial compliance

22  with the CTCA.  There is a two-part test for determining whether there has been substantial

23  compliance.   Westcon Const.,152 Cal.App.4th at 200.   The court must determine: "Is there

24  some compliance with all of the statutory requirements; and, if so, is this compliance sufficient to

25  constitute substantial compliance?" City of San Jose v. Superior Court, 12 Cal.3d 447, 456-57

26  (1974).  Pursuant to Section 910, a claim brought under the CTCA shall show all of the following:

27

28    8

1

(a) The name and post office address of the claimant.
(b) The post office address to which the person presenting the claim desires notices

2

to be sent.
(c) The date, place and other circumstances of the occurrence or transaction which

3

gave rise to the claim asserted.
(d) A general description of the indebtedness, obligation, injury, damage or loss

4

incurred so far as it may be known at the time of presentation of the claim.
(e) The name or names of the public employee or employees causing the injury,

5

damage, or loss, if known.
(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the

6

date of presentation of the claim, including the estimated amount of any
prospective injury, damage, or loss, insofar as it may be known at the time of the

7

presentation of the claim, together with the basis of computation of the amount
claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar

8

amount shall be included in the claim. However, it shall indicate whether the claim
would be a limited civil case.

9

10   Here, the letter does not include an address at which Plaintiff can be contacted.  In addition, the

11   letter does not contain a description of the damages Plaintiff seeks.   The letter does not demand a

12   dollar amount for Plaintiff's damages nor provide any information about whether the action is a

13   limited civil case.   Thus, the court cannot find substantial compliance.

14          Because Plaintiff did not comply with the CTCA, the court has no choice but to dismiss

15   the state law claims.    Leave to amend will not be given because Plaintiff does not claim to have

16   complied with the CTCA.  Plaintiff has already provided the court with the letter he did send to

17   the public entity involved, and this letter does not satisfy substantially comply with the CTCA.

18   **C.  Civil Rights Claim for Excessive Force**

19          Defendants contend that Plaintiff's constitutional claim for excessive force must be

20   dismissed because Plaintiff has not alleged a claim under the Eighth Amendment or the

21   Fourteenth Amendment's Due Process Clause.

22          The Eighth Amendment's prohibition against cruel and unusual punishment only protects

23   convicted prisoners.  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); Bell v. Wolfish, 441

24   U.S. 520, 535 (1979).   Rather, it is the Fourteenth Amendment's Due Process Clause that protects

25   pretrial detainees from the use of excessive force that amounts to punishment.  Graham, 490 U.S.

26   at 395 n. 10; Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002).  The Ninth

27

28                                                      9

1  Circuit has determined that the Fourth Amendment's standards set the applicable constitutional

2  limitations for considering claims of excessive force during pretrial detention.  Craver v. Allbee,

3  324 Fed.Appx. 597 (9th Cir. 2009); Gibson, 290 F.3d at 1197; Short v. Sanzberro, 2009 WL

4  5110676, *3 (E.D.Cal. 2009).[1]  As such, the court must evaluate Plaintiff's excessive force claim

5  under the Fourth Amendment's objective reasonableness standard.  Lolli v. County of Orange,

6  351 F.3d 410, 415 (9th Cir. 2003).   "[T]he reasonableness inquiry in an excessive force case is an

7  objective one: the question is whether the officers' actions are objectively reasonable in light of

8  the facts and circumstances confronting them, without regard to their underlying intent or

9  motivation."  Graham, 490 U.S. at 397; Lolli, 351 F.3d at 415.   In considering an excessive force

10  claim, the court is to balance "the nature and quality of the intrusion on the individual's Fourth

11  Amendment interests against the countervailing governmental interests at stake."  Graham, 490

12  U.S. at 396; Lolli, 351 F.3d at 415.

13      Taking the complaint's allegations as true, Defendants used excessive force on Plaintiff.

14  The complaint alleges that Defendant Irving and Defendant Finley opened the back doors to the

15  patrol car, started hollering at Plaintiff, and Defendant Finley punched Plaintiff in the face and

16  choked Plaintiff.   The complaint also alleges that Defendant Finley tasered him.   At the time this

17  force was used, the complaint alleges Plaintiff was only yelling for his girlfriend.   Punches,

18  chocking, and tasing are not reasonable uses for force if the allegations of Plaintiff's conduct are

19  true.  The complaint does admit that at some point Plaintiff ran towards the house, while still

20

21      [1]  In Pierce v. Maltnomah County, Organ, 76 F.3d 1032 (9th Cir. 1996), the Ninth Circuit

22  stated that "the Fourth Amendment sets the applicable constitutional limitations on the treatment
    of an arrestee detained without a warrant up until the time such arrestee is released or found to be

23  legally in custody based upon probable cause for arrest."  Id. at 1043.   Some courts have
    interpreted Pierce to hold that the Fourth Amendment standard applies only to the treatment of

24  individuals following an arrest and prior to arraignment. See Henderson v. Young, 2008 WL
    564712, *1-2  (N.D.Cal. 2008); Walck v. Dunkerson, 2007 WL 4179411, *10 (D.Mont. 2007).

25  However, it appears the Ninth Circuit has recently applied the Fourth Amendment standard even
    after a pretrial detainee had been arraigned.  See Craver v. Allbee, 324 Fed.Appx. 597 (9th Cir.

26  2009).   Regardless, the Fourth Amendment standard clearly applies in this action as the
    underlying events occurred after Plaintiff had been detained but before he had been arraigned.

27

28                                                10

1 handcuffed, hollering for his girlfriend.  In response, Defendant Wilkin ran up to Plaintiff and

2 kicked him in the back.   Regardless of whether this use of force was reasonable, the complaint

3 alleges the officers surrounded Plaintiff after he was on the ground and Defendants kicked,

4 punched, and tasered Plaintiff when he was lying on the ground.   Taking these allegations as true,

5 Defendants' use of force was unreasonable.   Thus, Plaintiff's excessive force claim, brought

6 under the Fourteenth and Fourth Amendment, is not subject to dismissal.    However, to avoid any

7 confusion, the court will formally dismiss Plaintiff's complaint without leave to amend to the

8 extent Plaintiff is attempting to include a claim pursuant to the Eighth Amendment.

9 **D.  Qualified Immunity**

10       Defendants contend that in the event the court finds the complaint states a civil rights

11 claim against Defendants Williams, Irving, Wilkin, and Finley for a constitutional violation they

12 are entitled to qualified immunity.

13       "The doctrine of qualified immunity protects government officials from liability for civil

14 damages insofar as their conduct does not violate clearly established statutory or constitutional

15 rights of which a reasonable person would have known." Pearson v. Callahan, – U.S.– , 129 S.Ct.

16 808, 815 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Rodis v. City, County of San

17 Francisco, 558 F.3d 964, 968 (9th Cir. 2009); Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).

18 "Qualified immunity balances two important interests-the need to hold public officials

19 accountable when they exercise power irresponsibly and the need to shield officials from

20 harassment, distraction, and liability when they perform their duties reasonably." Pearson, 129

21 S.Ct. at 815; Rodis, 558 F.3d at 968.   The defendant bears the burden of establishing qualified

22 immunity. Crawford-El v. Britton, 523 U.S. 574, 586- 87 (1998).

23       Where a constitutional violation occurs, a defendant is entitled to qualified immunity if he

24 or she acted reasonably under the circumstances. Millender v. County of Los Angeles, 564 F.3d

25 1143, 1148 (9th Cir. 2009).   The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), outlined

26 a two-step approach to qualified immunity.   The first step requires the court to ask whether

27

28                                              11

1  "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the

2  officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201;  Bull v. City and

3  County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010);  Millender, 564 F.3d at 1148. "If the

4  answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in

5  other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in

6  the situation he confronted.'"  Millender, 564 F.3d at 1148 (quoting Saucier, 533 U.S. at 201).   In

7  Pearson v. Callahan, 129 S.Ct. 808 (2009), the Supreme Court held that "judges of the district

8  courts and the courts of appeals should be permitted to exercise their sound discretion in deciding

9  which of the two prongs of the qualified immunity analysis should be addressed first in light of

10  the circumstances in the particular case at hand."  Id. at 818; Bull, 595 F.3d at 971. The Supreme

11  Court further stated that "the judges of the district courts and the courts of appeals are in the best

12  position to determine [what] order of decisionmaking will best facilitate the fair and efficient

13  disposition of each case."  Pearson, 129 S.Ct. at 821; see also Millender, 564 F.3d at 1149.

14        In the present case, as explained above, the constitutional right at issue is Plaintiff's right

15  to be free from excessive force; And, taking the complaint's allegations as true, Plaintiff has

16  alleged Defendants used excessive force.   The only remaining question in the qualified immunity

17  analysis is whether Plaintiff's right to be free from excessive force was clearly established.  See

18  Millender, 564 F.3d at 1148.   Plaintiff's general right to be free from excessive force was clearly

19  established long before April 25, 2008.  See Davis v. City of Las Vegas, 478 F.3d 1048, 1055 (9th

20  Cir. 2007); Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003).   Graham has

21  long been the standard for assessing the use of force by police officers, and its guidelines are

22  sufficient to clearly establish that some uses of force are unreasonable.  See Blankenhorn v. City

23  of Orange, 485 F.3d 463, 481 (9th 2007).   "In assessing the state of the law at the time of

24  [Plaintiff's] arrest, [the court] need look no further than Graham's holding that force is only

25  justified when there is a need for force."   Id.  The complaint's allegations allege that Defendants'

26  punched, kicked, and tased Plaintiff when he was in not resisting or escaping.   The unlawfulness

27

28                                              12

1  of such actions would appear readily apparent to any reasonable officer, and they are certainly not

2  a reasonable mistake. As such, qualified immunity must be denied at this time.

3  **E.  Legally Frivolous**

4        Defendants state that they "are concerned that Plaintiff has brought this action in the

5  absence of good faith and attempts to take advantage of cost-free filing to vex Defendants."

6        The court recognizes that it is obligated to review a complaint filed in forma pauperis, and

7  the court must dismiss a complaint if the court determines that the action is frivolous or malicious,

8  fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant

9  who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B).   While a claim supported by

10  "unlikely" facts cannot be dismissed, a claim may be properly dismissed if the allegations are

11  found to be "fanciful," "fantastic," or "delusional," or if they rise to the level of the irrational or

12  the wholly incredible." Denton v. Hernandez, 504 U.S. 25, 33 (1992); see also Neitzke v.

13  Williams, 490 U.S. 319, 328 (1989) (examples of factually frivolous claims include those

14  describing fantastic or delusional scenarios).   Taking the complaint's allegations as true, the

15  complaint states a claim for excessive force.   Further, the complaint's allegations do not rise to

16  the level as being fanciful, fantastic, or delusional.

17        The court does remind Plaintiff and all parties that under Rule 11of the Federal Rules of

18  Civil Procedure an award of sanctions is appropriate if a parties' claims, defenses, and/or other

19  legal contentions are frivolous, the factual contentions have no evidentiary support, and the factual

20  denials are not warranted by the evidence, reasonable belief, or lack of information.  See

21  Fed.R.Civ.Pro. 11.

<b>ORDER</b>

23      Accordingly, the court ORDERS that:

24          1.     Defendants' motion to dismiss is GRANTED in part and DENIED in part

25                as follows:

26                a.     Defendants' motion to dismiss Defendant Fresno Police Department

28  13

1         is GRANTED;

2     b.  Defendants' motion to dismiss the claims brought under California

3         law is GRANTED;

4     c.  Defendants' motion to dismiss Plaintiff's excessive force claims,

5         brought under the Fourteenth and Fourth Amendments, is DENIED;

6     d.  Defendants' motion to dismiss Plaintiff's Eighth Amendment claim

7         is GRANTED;

8     e.  Defendants' motion to dismiss on qualified immunity grounds is

9         DENIED without prejudice to raising this issue later in the

10        proceedings; and

11     f.  Defendants' motion to dismiss the complaint as frivolous is

12        DENIED;

13   2.  Defendant Fresno Police Department is DISMISSED with leave to amend

14     the complaint substitute the City of Fresno as a Defendant;

15   3.  All claims brought under California law and the Eighth Amendment are

16     DISMISSED without leave to amend;

17   4.  Any amended complaint SHALL be filed by July 12, 2010; and

18   5.  If Plaintiff does not file an amended complaint by July 12, 2010, the court

19     will proceed on the current complaint's Fourteenth Amendment and Fourth

20     Amendment excessive force allegations.

21

22 IT IS SO ORDERED.

23 **Dated:**  **June 8, 2010**        **/s/ Anthony W. Ishii**
                   CHIEF UNITED STATES DISTRICT JUDGE

24

25

26

27

28              14